**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


| | | |
|---|---|---|
| **DAVID BILLUPS,** | : | **Case No. C-1-01-377** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JUDGE SPIEGEL** |
| | : | **MAGISTRATE JUDGE HOGAN** |
| **JAMES MCWEENEY, et al.,** | : | |
| **Defendants.** | : | |


**DEFENDANT DR. PEDRO OBREGON'S**
**MOTION FOR SUMMARY JUDGMENT**


Comes now Defendant Dr. Obregon, by and through counsel, and, pursuant to

Fed. R. Civ. P. 56, moves the Court for summary judgment.  Since there are no issues

of material fact, Defendant is entitled to judgment as a matter of law.  The reasons are

stated in the attached Memorandum.


Respectfully submitted,

JIM PETRO
Attorney General of Ohio


s/ MARIANNE PRESSMAN
MARIANNE PRESSMAN (0059512)
Assistant Attorney General
Corrections Litigation Section
1600 Carew Tower
441 Vine Street
Cincinnati, OH  45202
Telephone:   (513) 852-3497
Facsimile:    (513) 852-3484
E-Mail:  mpressman@ag.state.oh.us

**MEMORANDUM**

I. **INTRODUCTION**

Plaintiff, an inmate currently incarcerated at Ross Correctional Institution (RCI), previously incarcerated at Lebanon Correctional Institution (LeCI) and Southern Ohio Correctional Facility (SOCF), filed this action *pro se* on June 7, 2001 pursuant to 42 U.S.C. §1983. (Doc. 1). He claimed that defendants were deliberately indifferent to his serious medical needs for his mercury poisoning and diabetes, and that he was denied access to Court. On October 31, 2001, after his transfer to SOCF, Plaintiff moved to supplement his complaint, adding Dr. Pedro Obregon, SOCF's Medical Director and two other newly named defendants. (Doc. 14) Plaintiff alleged that Defendant Dr. Obregon denied him proper health treatment when he was incarcerated at Southern Ohio Correctional Facility (SOCF). On May 1, 2002, the Court granted plaintiff's motion to supplement his complaint adding Dr. Pedro Obregon as a defendant but denied adding the other two defendants. (Doc. 44). On June 28, 2003, all other claims and defendants except Audrey Young, Cashier at LeCI, were recommended for dismissal. (Doc. 115) Plaintiff seeks punitive and compensatory damages and an Order from the Court, that the agents and supervisors of the Defendant Dr. Obregon cease denying him his civil rights. As there are no issues of material fact, this case should be dismissed as a matter of law.

II. **FACTS**

In February, 1992, before the claims at issue here, Plaintiff, while already incarcerated, was struck on the left forearm with a metal pipe containing mercury. Apparently, some of the mercury penetrated his skin and entered his body. He was

treated for mercury poisoning on an ongoing basis for several years, including

consultations with a toxicologist, Dr. Marcel Casavant, of Children's Hospital in

Columbus, Ohio.  In June, 1995, he was given a surface echo test.  The test is used to

look for mercury around the heart.  (Ex. A 1st Casavant Aff.)[1].  Based on the results of

the surface echo test, no medical action was needed at that time.  (*Id* ¶8) He was seen

by Dr. Casavant for a consultation in October, 1998.  (Ex. B)  In July, 1999, Dr.

Casavant saw him again and wrote on the consultation form, "I'm pleased with results of

recent blood and urine studies for mercury."  (Ex. C).  In September, 1999, Dr.

Casavant also ordered a neuropsychological evaluation.  The purpose of the test was to

determine whether Plaintiff suffered any neuropsychological deficits as a result of the

mercury poisoning.  The results of the test showed a normal examination.  (Ex. D).

Plaintiff had filed a previous lawsuit, case #C-1-95-1141 in which one of his claims was

that he was subjected to a month delay in getting the surface echo test done.  Dr.

Casavant provided a sworn affidavit in which he stated that no medical action was taken

after the test.  (Ex. A).  Thus, Plaintiff suffered no injury and the claim was dismissed by

this Court.  Dr. Casavant also mentioned the neuropsychological evaluation.  He noted,

"As a result of this evaluation, it does not appear that he yet has any documented

problem due to the presence of mercury."  (Ex. A ¶ 11).  On December 16, 1999,

Plaintiff sent Dr. Casavant a letter terminating their patient relationship.  (Ex. E).  Dr.

Casavant responded, leaving the door open if Plaintiff wanted to return as his patient.

(Ex. F).  There is no record to indicate that Plaintiff informed the medical staff of LeCI or

SOCF that he had terminated his relationship with Dr. Casavant.  On October 26, 1999,

---

[1] The exhibits used in this motion were originally used in Defendants' Supplemental Motion for Summary Judgment (Doc. 100).  They are attached here for the Court's convenience.

during the time that Plaintiff was incarcerated at LeCI, Dr. Dulan, under Dr. McWeeney's supervision, placed Plaintiff on a Succimer protocol, a form of chelation therapy, to remove some of the mercury from his body.  This protocol was to be used every other month.  (Ex. G).  On April 10, 2001, Dr. Casavant received an inquiry from the Corrections Medical Center, requesting a reassessment.  (Ex. H).  Dr. Casavant wrote a note on the consultation sheet "Please call to say 1) Does Plaintiff want me to be his toxicologist?  If yes…"  he would need a urine test, blood test and schedule an appointment when the test results are reported.  Two days later, Dr. Dulan from LeCI called, asking Dr. Casavant to see Plaintiff.  (Ex. I 2nd Casavant Aff. ¶11).  Dr. Casavant advised him to talk to his patient.  If he was willing to see him, he would get him scheduled.  If not, specimens could be collected and assessed without a visit or he could try to find another toxicologist.  (*Id* ¶12).  On April 12, 2001, Dr. Dulan wrote an order to schedule him to see Dr. Casavant.  (Ex. G).

Plaintiff was transferred to SOCF on April 24, 2001.  Defendant Dr. Obregon, the SOCF Medical Director, saw him shortly thereafter on May 4, 2001.  (Ex. M).  At that time, Plaintiff informed him of all of his medical needs, including the mercury poisoning.  Plaintiff was seen again on May 17, 2001.  (*Id.*)  He wanted to self-carry his mercury medication, but that was against policy.  That same day, Dr. Obregon consulted with Dr. Martin, ODRC's Chief of Medical Services.  He sent some medical records to Dr. Bruce Martin for consultation.  (Ex. K, Obregon Aff. ¶13).  He was advised that, since plaintiff's blood levels were normal, his blood levels should be monitored and treated, only when elevated.  (Ex. L).  Plaintiff already had an appointment to be seen by Dr. Casavant at Children's Hospital on May 17, 2001, but Plaintiff refused to go.  (Ex. J).  Plaintiff was

seen in nurses' sick call on May 29, 2001. (Ex. M). Plaintiff stated that Dr. Obregon was to write medical orders that he was not to be around heat, due to his mercury poisoning and that he also wanted a smoke-free environment. He was advised that there was no smoke-free housing available in general population. He was not assigned to a job that made heat an issue. Based on the medial records and his consultation with Dr. Martin, on June 1, 2001, Dr. Obregon discontinued the Succimer, noting his mercury blood level was within normal limits. (Ex. M). On July 23, 2001, Plaintiff refused to go out of his cell to have blood drawn, despite Dr. Martin's advice. (Ex. L). He has had no further treatment for mercury poisoning and has had no symptoms or ill effects during all this time.

Plaintiff continued to be seen in medical as needed until he was transferred to Ross Correctional Institution on January 22, 2003.

## III.    STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Maiden v. Johnson*, 1999 U.S. LEXIS 13300 (6th Cir. June 10, 1999), citing *Davis v. Sodexho Cumberland College Cafeteria*, 157 F.3d 460, 462 (6th Cir. 1998). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Id.* citing *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). "The mere existence of a scintilla of evidence to support the Plaintiff's position

will be insufficient; rather, evidence must exist on which the jury can reasonably find in

avor of the Plaintiff."    See *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).    In

*Anderson*, the Supreme Court noted that a Plaintiff could not defeat a properly

supported summary judgment motion without offering "any significant probative

evidence tending to support the complaint."  477 U.S. at 257.  The "mere possibility" of a

factual dispute is not enough.  *Greg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.

1986).  In order to defeat summary judgment, a Plaintiff must come forward with more

persuasive evidence to support his claim than would otherwise be necessary.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, p. 475 U.S. 574 (1986).  "Where the

defendant demonstrates that after a reasonable period of discovery the Plaintiff is

unable to produce sufficient evidence beyond the bare allegations of the complaint to

support an essential element of his or her case, summary judgment should be granted."

 *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  In the case at bar, Plaintiff has provided

no evidence to support his claims.

IV.    **LAW ARGUMENT**

      **No Deliberate Indifference**

      Plaintiff alleges that Dr. Obregon was deliberately indifferent to his serious

medical needs.  Specifically, he alleges that Defendant ignored his permanent medical

restrictions related to mercury poisoning.  The alleged restrictions ignored were that he

needed a non-smoking environment and a job where he is not exposed to heat.

Evidence shows Dr. Obregon was not deliberately indifferent.

      Under the Eighth Amendment, only the "unnecessary and wanton" infliction of

pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment.

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *citing Whitley v. Albers*, 475 U.S. 312, 319 (1986).  An inmate may state a cause of action under the Eighth Amendment for involuntary exposure to second hand smoke which results in a present injury or an unreasonable risk of serious harm to his future health.  *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).  Pursuant to *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), to establish an Eighth Amendment claim regarding exposure to environmental tobacco smoke (ETS), the Plaintiff must prove the existence of both an objective and subjective component.

The objective component requires that the deprivation alleged be "sufficiently serious" to establish the objective component, Plaintiff must prove that he himself has a serious medical need for a smoke free environment.  See *Hunt v. Reynolds*, 974 F.2d 734 (6th Cir. 1992) cert denied 510 U.S. 1052 (1994).  In the alternative, regardless of health, the level of ETS at SOCF must create an unreasonable risk of serious damage to Plaintiff's future health.  See *Helling*, 509 U.S. at 35.  He must also show that there was more than a statistically probability that he would be injured by ETS.  Plaintiff must also establish the objective component of his Eighth Amendment claim by proving that his pre-existing medical conditions were such that exposing him to ETS represented a serious health threat to him, not merely a discomfort.  *Hunt* at 735.

Under the subjective component, Plaintiff must establish that Defendant acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 19 ).  Plaintiff must present evidence that Defendant's conduct amounted to deliberate indifference to a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 847.

7

Plaintiff alleges that he suffers from mercury poisoning and has a serious medical condition requiring a smoke free environment.  It is true that Plaintiff has had mercury in his system since 1992.  However, the latest tests indicate that his blood levels and urine samples show him in the normal range and that he is no longer suffering any symptoms of the mercury poisoning.  He is receiving no medication or treatment.  The medical staff at an institution where he is incarcerated is to periodically monitor his blood levels to be sure that the condition does not flare up again.  There is nothing in his medical records to support Plaintiff has suffered any harm from the limited ETS exposure.  Second, there is no evidence that exposure to ETS poses a greater risk to this Plaintiff than it does to any other person.  (Ex. I, 2nd Casavant Aff. ¶14)  According to his former specialist, exposure to heat is also not a threat to his health.  (*Id.* ¶15)

Plaintiff presents evidence that he was given an order for a non-smoking cellblock while he was at Ross Correctional Institution (RCI), the first time.  Records indicate that he was there from November 3, 1998, to June 23,1999.  Plaintiff presents a medical restriction statement from RCI dated January 27, 1999, almost three months after he arrived, for an "indefinite" smoke free unit <u>at that institution</u>.  (emphasis added) He presents no evidence that there were any prior medical orders.  Thus, although he was at RCI from November 3, 1998, the restriction was not even issued until January 27, 1999, several months later.  Plaintiff was transferred to Richland Correctional Institution (RiCI) on June 23, 1999.  There is no record of a non-smoking restriction from that institution nor from the institution where he was prior to RCI, Mansfield Correctional Institution (MaCI).  He was transferred to LeCI on September 17, 1999.  Originally, the LeCI Medical Director, Dr. McWeeney was a defendant in this case after he rescinded

an order written by his employee, Dr. Dulan, that he be placed at the top of the list for a smoke free cellblock.  This Court found that Plaintiff failed to establish the objective component of his Eighth Amendment claim against Dr. McWeeney, since Plaintiff exhibited no symptoms of a pulmonary condition that would cause injury from ETS, nor was he taking medications, using systemic steroids or suffering a breathing disorder.

The Court concluded "Most importantly, the undisputed evidence shows that exposure to second hand smoke posses no greater threat to a person with Mercury poisoning than to any other individual".  The Court cites Dr. Casavant's affidavit Ex. I ¶14.

Plaintiff was transferred to SOCF after he had been at LeCI.  As was required for Dr. McWeeney, Plaintiff must show that Dr. Obregon knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abaid it.  *Farmer v. Brennan*, 511 U.S. at 847.  Within days of Plaintiff's arrival at SOCF, Dr. Obregon saw him in the infirmary.  When Plaintiff informed him of his claimed medical needs including consideration for the mercury poisoning, Defendant Obregon contacted his supervisor, the chief of medical services for consultation.  He was advised that Plaintiff's condition was stable and that he merely required periodic monitoring and that he be treated only when elevated.  Throughout his stay at SOCF, there was never a time that Plaintiff required any treatment.  When Plaintiff arrived at SOCF he already had an appointment to see Dr. Casavant for a follow up to be sure that he was still stable.  However, Plaintiff refused to go to the appointment.  As with Dr. McWeeney, it was reasonable for Dr. Obregon to rely on the information he received through the medical records and his consultation with his supervisor to determine that

Plaintiff did not have a serious medical need for a smoke-free environment. Plaintiff has presented no additional evidence indicating that he had any greater need for a smoke-free environment at SOCF than he did at LeCI. There is nothing in his medical records that Plaintiff suffered any harm from limited ETS at SOCF. Therefore, there is no issue of material fact as to whether Dr. Obregon was deliberately indifferent to Plaintiff's medical condition by refusing him special accommodations at SOCF. Therefore, Dr. Obregon's Motion for Summary Judgment on Plaintiff's Eighth Amendment claim should be granted.

## V.    CONCLUSION

Plaintiff claims that, because he has mercury poisoning, he needs special medical consideration. Tests, records, and affidavits indicate his blood levels are normal and he needs no accommodation. For all these reasons, this case should be dismissed and an Order issued in favor of Defendant Dr. Obregon.

Respectfully submitted,

JIM PETRO
Attorney General of Ohio


s/ MARIANNE PRESSMAN
MARIANNE PRESSMAN (0059512)
Assistant Attorney General
Corrections Litigation Section
1600 Carew Tower
441 Vine Street
Cincinnati, OH  45202
Telephone:   (513) 852-3497
Facsimile:    (513) 852-3484
E-Mail:  mpressman@ag.state.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded to Plaintiff, David Billups, #211-903, Ross Correctional Institution, P.O. Box 7010, Chillicothe, Ohio 45601by regular U.S. mail on this 21st day of November, 2003.

<u>s/MARIANNE PRESSMAN</u>
MARIANNE PRESSMAN
Assistant Attorney General