UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID BILLUPS, | : | Case No. C-1-01-377 |
|     Plaintiff, | : | |
| | : | |
| v. | : | JUDGE SPIEGEL |
| | : | MAGISTRATE JUDGE HOGAN |
| JAMES MCWEENEY, et al., | : | |
|     Defendants. | : | |

**DEFENDANT AUDREY YOUNG'S SUPPLEMENTARY OBJECTION
TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

In his lawsuit filed on June 7, 2001, Plaintiff made several claims and named a number of defendants. He also supplemented his complaint with additional defendants. Under separate cover, Defendant Dr. Pedro Obregon has filed a Motion for Summary Judgment seeking dismissal of the claim against him. (Doc. 123) All other claims, with the exception of the claim against Defendant Young have already been dismissed. By the time this lawsuit was ripe for responding, Ms. Young had retired from the institution, moved out of the area, and was not available to counsel for consultation. Therefore, counsel attempted to obtain a dismissal for Ms. Young using documents that had been made available to her by the institution. After locating Ms. Young, who clarified the documents, and based upon the evidence attached, she, too, should be dismissed as a matter of law.

Plaintiff claims Ms. Young failed to process his appeal to the Court of Claims, causing it to be dismissed. Records indicate that Plaintiff returned from a medical roundtrip on Monday, November 29, 1999. (Ex. A).[1] According to his complaint, he did

---
[1] A printout of the December, 1999, calendar has been attached for the convenience of the Court.

not give a cash slip to his unit manager until Friday, December 3, 1999. The cash slip was to pay the filing & postage for an appeal of a dismissal in the Ohio Court of Claims due December 9, 1999. Plaintiff's appeal to the Ohio Court of Claims was denied as untimely. Thereafter, he filed an informal complaint with the institution. (Ex. B). The Institutional Inspector responded to him, that his cash slip would have been processed on the 6th or 7th of December and that he did not have enough money to process the cash slip. (*Id*). It is the procedure of the cashier's office to process cash slips each Friday. (Ex. C, Watts Aff. ¶5). This is done because all commissary charges incurred during the week must be deducted first. (*Id*). Therefore, the earliest that his Notice of Appeal could have been mailed would have been December 10, 1999, one day after his appeal deadline. If he had submitted the cash slip any time during the week that he returned to the institution, it could have been processed on December $3^{rd,}$ and sent out that day. According to Plaintiff's account statement, he had $33.10 on December 2, 1999. (Ex. D). On December 10, 1999, when the cash slip was being processed, it was determined by the cashier handling his cash slip, not Defendant Young, that he did not have sufficient funds to cover the cost of the filing fee for the appeal and the postage required. The reason for that was that on December 9, 1999, one day prior to the Friday processing date, he spent $11.09 at the Commissary leaving him a balance of $24.04. (Ex. C, Aff. ¶9 & Ex. D). Plaintiff claims that institutions pay the postage in cases where inmates do not have sufficient funds to send documents to a court. This is incorrect. Pursuant to policy, and the Administration Code, inmates are entitled to one free legal envelope per week. O.A.C. §5120.9-18(D) This means one first class stamp, not a larger envelope and additional postage. (*Id*. ¶11). Therefore,

because Plaintiff spent too much money in the commissary, he did not allow himself enough money to send his Notice of Appeal.

Plaintiff later filed a grievance of this matter on June 7, 2000. He said in part "the <u>cashier's office</u> held on to my legal mail…" (Ex. E) (emphasis added). He did not claim that Ms. Young, the supervisor was personally responsible. The Inspector of Institutional Services timely responded to the grievance, stating in part, "Grievant was interviewed again on June 15, 2000, and had the computer readout explained in detail by the inspector. (Ex. F). Grievant now has a clear understanding of how the delay occurred. The cashier office was not found to be at fault. There is insufficient evidence to support grievance claim of mishandling of funds." (*Id*). Despite the fact that Plaintiff said he understood what had happened, he went forward with his claim against Ms. Young anyway.

Plaintiff has brought this claim pursuant to 42 U.S.C. §1983. He claims that Ms. Young is being sued in her individual and official capacity. In order to have a claim against a named Defendant, Plaintiff must show that the Defendant was personally involved in the matter complained of. In the case at bar, Ms. Young had no personal involvement. At the relevant time, she was the supervisor of the cashier's office at LeCI. (Watts' Aff. ¶12). In that capacity, she did very little posting of cash slips because she had other duties. (*Id*) Mr. Watts and another account clerk were responsible for most of the postings. When postings are done, the person from the cashier's office who adds or subtracts the money, places his or her initials next to the posting. According to the page of the statement attached by the Plaintiff, the only posting that Ms. Young did was on December 15, 1999, with her initials ACY, when she deducted $13.02 for the

Plaintiff's commissary bill, (Ex. D). Therefore, she was not personally responsible for holding his cash slip until Plaintiff had sufficient money. Plaintiff's Complaint fails to state a claim for relief because it seeks to base liability against Ms. Young on the theory of *respondeat superior*. It is well established that liability under 42 U.S.C. §1983 may be based only on allegations that the Defendant "either encouraged the specific incident of misconduct or in some way directly participated in it." *Hayes v. Jefferson County*, 668 F.2d 869, 874 (6th Cir), *cert denied*, 459 U.S. 833 (1982). Since Ms. Young did not personally handle the cash slip at issue, she cannot be held liable in this action.

Ms. Young did respond to all kites sent to her by inmates. Plaintiff alleges he sent a kite to Ms. Young on December 3, 1999. He attaches Plaintiff's Ex. A as evidence. (Def. Ex. G) This exhibit should be disregarded for four reasons: 1) It is not dated, 2) There is no evidence that it was addressed to Ms. Young since he did not attach the front side of the kite, (see a sample of the front of a kite (Ex. C, Aff., with Ex. B, attached). 3) There is no evidence of a response. All kites are answered on the page of the kite where the message has been written. (Aff. ¶19). 4) A kite log is kept in the cashier's office to record all kites received, when they were answered, the nature of the complaint, and the response. A review of the kite log during the relevant time indicates that Plaintiff did not send a kite to Ms. Young or anyone else in the Cashier's Office between November 29, 1999, the day he returned from the hospital, and December 6th, 3 days after he claimed he sent a kite. [1] (Ex. C with Ex. A attached).

For all the foregoing reasons, this Court should allow Defendant Young's objection and dismiss the claim against her as a matter of law.

---

[1] All names of inmates have been redacted for the sake of their privacy.

Respectfully submitted,

JIM PETRO
Attorney General of Ohio

s/ MARIANNE PRESSMAN
MARIANNE PRESSMAN (0059512)
Assistant Attorney General
Corrections Litigation Section
1600 Carew Tower
441 Vine Street
Cincinnati, OH  45202
Telephone:   (513) 852-3497
Facsimile:    (513) 852-3484
E-Mail:  mpressman@ag.state.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded to Plaintiff, David Billups, #211-903, Ross Correctional Institution, P.O. Box 7010, Chillicothe, Ohio 45601by regular U.S. mail on this 24th day of November, 2003.

s/MARIANNE PRESSMAN
MARIANNE PRESSMAN
Assistant Attorney General